UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT JENNINGS, | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:11-cv-00972-SEB-DKL |
| CORRECTIONAL MEDICAL SERVICES, et al., | ) |
| Defendants. | ) |

**Amended Entry Discussing Motion for Summary Judgment**

Robert Jennings ("Jennings") is a state prisoner who at all times relevant to the complaint was confined at the Putnamville Correctional Facility ("Putnamville"). Jennings alleges that defendants failed to provide him constitutionally adequate medical care. The defendants seek resolution of these claims through the entry of summary judgment and for the reasons explained in this Entry the defendants' motion for summary judgment must be granted.

**I. Summary Judgment Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). The initial burden is borne by the party seeking summary judgment, which must demonstrate the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). *See also Serednyj v. Beverly Healthcare, LLC,* 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings"). Summary judgment is only appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Carlisle v. Deere & Co.,* 576 F.3d 649, 653 (7th Cir. 2009). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted). *See* Fed. R. Civ. P. 56(c)(1)(A),B)(both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

The court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine from the admissible evidence whether a genuine issue of triable fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008). The court considers facts in a light most favorable to the nonmovant. *Srail v. Vill. of Lisle,* 588 F.3d 940, 948 (7th Cir. 2009).

## II. Background

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the

light reasonably most favorable to Jennings as the non-moving party. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

At the times pertinent to Jennings' claims in this action he was a convicted offender in the custody of the Indiana Department of Correction and unless indicated otherwise was confined at the Putnamville Correctional Facility ("Putnamville"). The defendant individuals are medical providers employed by Corizon, Inc., formerly known as Correctional Medical Services, Inc. At the times pertinent to Jennings' claims in this action the Indiana Department of Corrections had contracted with Corizon for Corizon to provide on-side medical care at all state prison facilities. Corizon is a defendant. The defendant individuals are Dr. Paul J. O'Brien, D.O., Nurse Gregory J. Gast, Dr. Diane Elrod, D.O., Dr. Kathleen Beach, DDS, and Dr. Joseph Poland, DDS.

While an inmate at Putnamville, Jennings was attacked and injured by other inmates on the evening of August 23, 2009. On that evening, after the assault, Jennings was examined by Peggy S. Wells, LPN, for complaints of injuries from the assault. Nurse Wells noted active bleeding, signs of trauma, broken teeth and dental pain. Nurse Wells examined Jennings' face and checked his mouth. She found loose teeth and an abrasion on Jennings' lip. His right eye was tender and slightly swollen. Nurse Wells consulted with Corizon's Regional Medical Director, Dr. Michael Mitcheff, who advised her to provide Jennings with an ice pack and to place him in medical observation for further observation by Dr. Paul O'Brien.

Dr. O'Brien examined Jennings on August 24, 2009, noting swollen eyes, nose bleeding, facial pain, nasal congestion, tooth pain, and a loose tooth on the right side. Jennings had no shortness of breath, chest pain or neurological symptoms. Dr. O'Brien ordered Jennings to be transferred for x-rays of his mandible. X-rays were taken at the Putnam County Hospital and showed a non-displaced fracture of right nasal bone, an intact lower jaw, and bilateral maxillary

sinusitis. Dr. O'Brien examined Jennings again on August 25, 2009, noting that Jennings had tenderness around his face and a trickle of nose bleeding. He was given acetaminophen for pain and discharged from medical observation.

On September 27, 2009, Jennings was again assaulted at Putnamville, following which he was taken directly to the Putnam County Hospital emergency room and treated for a laceration to his right ear and multiple hematomas around his right eye, forehead and back of the head. He also complained of right rib discomfort. A CT scan of Jennings' brain and face showed complex facial fractures and a comminuted nasal fracture.

Jennings was returned to Putnamville on the evening of September 27, 2009. He was assessed by Brent Sykes, RN, at 11:19 p.m. Nurse Sykes consulted with Gregory Gast, an Advanced Nurse Practitioner, who ordered Vicodin and Colace for Jennings. Dr. O'Brien examined Jennings on September 28, 2009. Dr. O'Brien noted the right mandible fracture and referred Jennings for an assessment and further treatment by Dr. Joseph Poland, D.D.S.

Nurse Gast examined Jennings on October 1, 2009, after an initial visit with Dr. Poland at the Plainfield Correctional Facility. Nurse Gast noted that Jennings remained on a "broken jaw" diet, and that he would be returning to Plainfield Correctional Facility ("Plainfield") the following week under the care of Dr. Poland.

Jennings was transferred to Plainfield on October 6, 2009. He was examined by Dr. Poland on October 9, 2009, at which time Dr. Poland confirmed that Jennings had a fracture of the maxilla, part of the jawbone structure, and applied an intermaxillary fixation device to assist with healing.

Jennings was examined by RN Cheryl West on October 11, 2009. Jennings' mouth remained wired shut, he denied any difficulty swallowing or breathing, and he was able to walk with a steady gait.

Jennings was examined by Dr. Person on October 13, 2009. Jennings had complained of changes in his vision. Dr. Person ordered an x-ray of Jennings' eye sockets. The result of this x-ray was negative.

Jennings was examined at the infirmary on October 25, 2009, and received new rubber bands for his fixation device. The following day, LPN Amber Woods examined Jennings and noted that he was active and ambulatory, with no complaints or concerns with his ear, nose or eyes. Jennings did complain of some persistent pain from his facial area.

On October 27, 2009, LPN Karen Erickson examined Jennings in the infirmary after the rubber bands on his fixation device had broken or come off. Nurse Erickson noted, "Offender has been informed several times by this nurse of the importance of not opening mouth and eating foods other than ordered for broken jaw. Offender was seen in hallway this a.m. verbalizing with others with more movement to jaw than instructed which is causing bands to pop and break."

Dr. Person discharged Jennings from the infirmary on November 6, 2009.

Jennings neither requested nor received any further physician treatment until December 28, 2009, by which time he had been transferred to the Correctional Industrial Facility. On that day, Dr. Diane Elrod examined Jennings for complaints of occasional right testicle pain. On exam, Dr. Elrod did not detect anything unusual. She advised Jennings to self-examine monthly.

On December 22, 2009, Dr. Kathleen Beache, DDS, noted that Jennings wished to be evaluated for dentures. Jennings was scheduled to see Dr. Poland on February 9, 2010, but Dr. Poland had to reschedule due to bad weather. Thus, on February 11, 2009, Dr. Kathleen Beache examined Jennings and sought approval for the dentures, noting that Jennings had a left malocclusion that could be resolved by fabrication of a prosthesis after additional dental work.

On March 30, 2009, Jennings had four teeth extracted by Dr. Beache. Jennings missed follow-up dental appointments on May 4 and June 15, 2009, but he had four additional teeth extracted on July 21, 2009.

In the meantime, Jennings returned to Dr. Elrod with complaints of scrotal pain on April 19, 2010. Dr. Elrod could detect find no source of the pain, but when Jennings again complained of scrotal swelling on May 3, 2010, Dr. Elrod placed him on chronic care, meaning he would receive routine examinations by medical staff.

On October 22, 2010, impressions were taken for an oral prosthesis for Jennings. Wax bites were taken for dentures on November 30, 2011. On January 11, 2011, Dr. Beache noted that Jennings upper denture was seated and checked, and he was satisfied.

Dr. Beache checked Jennings' upper denture and noted that Jennings was pleased. Thereafter, adjustments to the dentures were made as needed.

### III. Discussion

Jennings' claims are brought pursuant to 42 U.S.C. ' 1983. ASection 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, "the first step in any [' 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

Jennings' claims implicate protections of the Eighth Amendment to the United States Constitution. *Helling v. McKinney*, 509 U.S. 25, 31 (1993)("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to

guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

In the context presented here, "[p]rison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. A claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition, and 2) an official's deliberate indifference to that condition." *Williams v. Liefer,* 491 F.3d 710, 714 (7th Cir. 2007) (some internal citations omitted). As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). As to the second element, "[t]o show deliberate indifference, the plaintiff must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). For the defendant medical professionals to be liable for deliberate indifference to an inmate's medical needs, they must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood,* 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County,* 163 F.3d 982, 988 (7th Cir. 1998)); *see also Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006). "Deliberate indifference is more than negligence and approaches intentional wrongdoing." *Johnson,* 444 F.3d at 585 (internal quotation omitted). "[D]eliberate indifference is essentially a criminal recklessness standard, that is, ignoring a known risk." *Id.* (internal quotation omitted). "Even gross negligence is below the standard needed to impose constitutional liability." *Id.* (internal quotation omitted).

The defendants have established that there was no violation of Jennings' federally secured rights associated with the delivery of necessary medical services to him during his confinement at the Putnamville or thereafter. A court examines the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs. *Reed v. McBride,* 178 F.3d 849, 855 (7th Cir. 1999). A course of treatment violates the Eighth Amendment only when it departs so radically from the standards of the profession that it falls outside the bounds of the defendant's professional judgment. *See King v. Kramer*, 680 F.3d 1013, 1018–19 (7th Cir. 2012); *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008). None of the defendant individuals acted or failed to act in a manner which fell below this standard. The most that has been established here is that Jennings suffered serious injuries in the first assault and even more serious injuries in the second attack a few weeks later. These injuries were assessed and treated, referrals were made as warranted, an institution transfer to Plainfield occurred to facilitate Jennings' medical care, Jennings was instructed and reminded to not permit jaw movements to interfere with the healing process, and dentures were provided after teeth had been extracted.

The evidentiary record summarized above defeats any claim of a subjective state of mind required to show deliberate indifference, *i.e.,* that any defendant was "subjectively aware of [Jennings's] serious medical needs and disregarded an excessive risk that a lack of treatment posed to his health or safety." *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001). Jennings's opinion otherwise does not support a claim of cruel and unusual punishment. *Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir. 2001) (AA difference of opinion as to how a condition should be treated does not give rise to a constitutional violation.@). Jennings offers no evidentiary basis on which to conclude that the defendant individuals did not exercise reasonable professional judgment when assessing and treating his = medical condition.

"Medical decisions that may be characterized as classic examples of matters for medical judgment . . . such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Snipes v. DeTella,* 95 F.3d 586, 591 (7th Cir. 1996) (internal citations omitted). While the medical care Jennings received "may not have been entirely to his satisfaction, the Constitution does not guarantee a prisoner's choice of a physician, a mode of treatment, or a place of treatment, nor does it (or could it) guarantee a particular outcome or level of comfort in the face of physical maladies." *Gerald v. Ind. Dep't of Corr.,* 2009 WL 1795178, at *3 (S.D.Ind. June 23, 2009) (citations omitted). There is simply no basis for finding "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate a complete abandonment of medical judgment." *Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006). Isolated incidents of delay do not rise to the level of deliberate indifference. *See Walker v. Peters,* 233 F.3d 494, 501 (7th Cir. 2000). Additionally, there can be no claim under the Eighth Amendment simply because medical procedures were unsuccessful or, if successful, were not fully effective in alleviating the effects of a condition. Because of this showing, the defendant individuals are entitled to the entry of judgment in their favor and against Jennings. *Celotex Corp.*, 477 U.S. at 322-23 (explaining that when the moving party has met the standard of Rule 56, summary judgment is mandatory).

The foregoing conclusively resolves the motion for summary judgment filed by the defendant individuals. Corizon is also a defendant here. Our review of the claim against Corizon shows it to be insufficient, as well, because there is no plausible allegation that this entity has a custom or policy of denying inmates adequate medical care under the Eighth Amendment. *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 828 (7th Cir. 2009).

## IV. Conclusion

The defendants' motion for summary judgment [dkt 35] is **granted.** Jennings' motion for his filings to be liberally construed [dkt 51] is also **granted.** The Judgment docketed on March 24, 2014, remains in effect and no amended judgment is required. This Amended Entry is issued solely to correct scrivener's errors.

IT IS SO ORDERED.

Date: 03/25/2014

_SARAH EVANS BARKER, JUDGE_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Robert Jennings
890440
Correctional Industrial Facility
Inmate Mail/Parcels
5124 West Reformatory Road
Pendleton, IN 46064

Electronically Registered Counsel